UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| **SAQUIB K.,** | Civil Action No. 20-3849 (SDW) |
| Petitioner, | |
| v. | OPINION |
| **JOHN TSOUKARIS, et al.,** | |
| Respondents. | |

**WIGENTON,** District Judge:

Presently before the Court is the petition for a writ of habeas corpus of Petitioner, Saquib K., filed pursuant to 28 U.S.C. § 2241. (ECF No. 1). Also before the Court is Petitioner's motion seeking a temporary restraining order. (ECF No. 7). Following an order to answer, the Government filed responses to the petition and motion (ECF No. 11, 16-17), to which Petitioner has replied. (ECF No. 7). Petitioner also filed a motion to expedite these proceedings. (ECF No. 12, 18). For the following reasons, this Court will grant the habeas petition in part and deny it in part without prejudice, will deny Petitioner's motion seeking a temporary restraining order without prejudice, and will order the Government to provide Petitioner with a bond hearing before an immigration judge within ten days.

**I. BACKGROUND**

Petitioner is a 58 year old native and citizen of Pakistan who first entered the Untied States in April 1994 as a lawful permanent resident. (Document 6 attached to ECF No. 11). The parties dispute the exact nature of Petitioner's health issues, but it is clear that he suffers from hypertension/high blood pressure, some lung issues at least including allergic rhinitis if not more

serious conditions, and elevated blood glucose levels which may be indicative of pre-diabetes. (Document 1 attached to ECF No. 17; ). In December 2014, however, petitioner was convicted of bank fraud in the Eastern District of New York, resulting in a sentence of four years probation, community service, and restitution of well over four million dollars. (Document 6 attached to ECF No. 11). at 2). Based on this conviction, Petitioner was taken into immigration custody and placed in removal proceedings on April 17, 2019. (*Id.*). Petitioner has been detained since that date. (*Id.*). Although there has been some delay in Petitioner's removal proceedings due to continuance requests made by Petitioner (*see* Document 1 attached to ECF No. 16), Petitioner's proceedings have also been delayed due to scheduling, transfer, and other issues beyond Petitioner's control on several occasions. (Document 1 attached to ECF No. 18). The parties appear to agree, however, that Petitioner has been pursuing legitimate claims for relief from removal whose merits have yet to be decided by an immigration judge. (*Id.*). Petitioner's next hearing is scheduled for July 8, 2020. (ECF No. 18 at 5).

## II. DISCUSSION

### A. Legal Standard

Under 28 U.S.C. § 2241(c), habeas relief may be extended to a prisoner only when he "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). A federal court has jurisdiction over such a petition if the petitioner is "in custody" and the custody is allegedly "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3); *Maleng v. Cook*, 490 U.S. 488, 490 (1989). As Petitioner is currently detained within this Court's jurisdiction, by a custodian within the Court's jurisdiction, and asserts that his continued detention violates due process, this Court has jurisdiction over his

claims. *Spencer v. Kemna*, 523 U.S. 1, 7 (1998); *Braden v. 30th Judicial Circuit Court*, 410 U.S. 484, 494-95, 500 (1973); *see also Zadvydas v. Davis*, 533 U.S. 678, 699 (2001).

**B. Analysis**

In his habeas petition and briefing in this matter, Petitioner essentially presents three claims – two conditions of confinement claims in which he alleges the Government has both subjected him to punitive conditions and has been deliberately indifferent to his health concerns in light of COVID-19 and his medical history, and a third claim in which he claims that his current period of immigration detention has become unconstitutionally prolonged. As Petitioner is currently detained pursuant to 8 U.S.C. § 1226(c), this last claim arises out of the Third Circuit's decisions in *Diop v. ICE/Homeland Sec.*, 656 F.3d 221, 231-35 (3d Cir. 2011), and *Chavez-Alvarez v. Warden York County Prison*, 783 F.3d 469 (3d Cir. 2015).

Although the Supreme Court abrogated the direct holdings of both *Diop* and *Chavez-Alvarez* in *Jennings v. Rodriguez*, 538 U.S. ---, 138 S. Ct. 830 (2018), s*ee Borbot v. Warden Hudson Cnty. Corr. Facility*, 906 F.3d 274, 278-79 (3d Cir. 2018), both courts in this District and the Third Circuit have recognized that the abrogation of the constitutional avoidance holdings of *Diop* and *Chavez-Alvarez* did not rob those cases of all precedential authority. *Id.*; *see also Dryden v. Green*, 321 F. Supp. 3d 496, 502 (D.N.J. 2018). Specifically, the Third Circuit has noted that "*Jennings* did not call into question [the] constitutional holding in *Diop* [and *Chavez-Alvarez*] that detention under § 1226(c) may violate due process if unreasonably long." *Borbot*, 906 F.3d 278-29; *see also Dryden*, 321 F. Supp. 3d at 502.

After *Jennings*, it therefore remains the law in this Circuit that the as-applied "constitutionality of [§ 1226(c) detention is] a function of the length of the detention [and t]he

constitutional case for continued detention without inquiry into its necessity becomes more and more suspect as detention continues," and "any determination on reasonableness [requires a] highly fact specific" inquiry. *Chavez-Alvarez*, 783 F.3d at 474-75; *see also Diop*, 656 F.3d at 232, 234. An alien's immigration detention may thus become an unconstitutional application of § 1226(c) where the prolonged nature of that detention becomes "so unreasonable [that it] amount[s] to an arbitrary deprivation of liberty [which] cannot comport with the requirements of the Due Process Clause." *Dryden*, 321 F. Supp. 3d at 502; *see also Demore*, 538 U.S. at 432; *Chavez-Alvarez*, 783 F.3d at 474. Although "aliens who are merely gaming the system to delay their removal should not be rewarded with a bond hearing that they would otherwise not get under the statute," *Chavez-Alvarez*, 783 F.3d at 476, where an alien's detention becomes unreasonably prolonged merely because he has pursued valid challenges to his removal, his detention may eventually become so arbitrary that the Due Process clause requires a bond hearing at which the Government bears the burden of proving that Petitioner is either a flight risk or danger to the community. *See K.A. v. Green*, No. 18-3436, 2018 WL 3742631, at * 4 (D.N.J. Aug. 7, 2018) (detention of nineteen months in the absence of bad faith on Petitioner's part warranted a bond hearing where Petitioner was pursuing a valid petition for review before the Third Circuit and had received a stay of removal); *see also Carlos A. v. Green*, No. 18-13356, 2019 WL 325543, at *4 (D.N.J. Jan. 25, 2019) (detention of over eighteen months).

In this case, Petitioner has been detained for just over a year. Although Petitioner has been responsible for some of the delay in his underlying immigration proceedings, the Government and the procedures applicable to Petitioner's removal hearings have also been responsible for portions of that delay, and even the Government admits that there has been no evidence of bad faith or dilatory motive on Petitioner's part throughout his removal proceedings. The Court must also note

that those proceedings, and Petitioner's detention absent intervention from this Court, are also likely to continue for at least two months, and possibly considerably longer in the event that the immigration judge in Petitioner's removal proceedings requires further hearings beyond that scheduled for early July or Petitioner appeals any order of removal that may be entered. Given the length of Petitioner's detention, the likelihood that that detention shall continue absent a bond hearing for a considerable length of time, and the lack of bad faith or dilatory action on Petitioner's part, the facts of this matter weigh in favor of the granting of a bond hearing.

Although the Government rightly argues that Petitioner's detention has been less prolonged than that of others whom this Court has granted a bond hearing since the Supreme Court's ruling in *Jennings*, length alone is not dispositive of Petitioner's claim. As the Third Circuit has repeatedly advised district court's hearing such cases, any determination as to the constitutionality of the immigration detention statutes as applied to a given petitioner must be highly specific and must consider all of the relevant facts and circumstances presented by the petitioner's detention. *Chavez-Alvarez*, 783 F.3d at 474-75; *see also Diop*, 656 F.3d at 232, 234. Here, Petitioner has been detained for the past few months in the shadow of the COVID-19 pandemic, and suffers from several medical conditions that may exacerbate any viral infection were Petitioner to contract the virus. While Petitioner's medical history and the conditions at the facility in which he is detained are not so punitive in light of the corrective action taken by the facility's staff to warrant the extreme remedy of outright release at this time as explained in more detail below, those conditions must be accounted for in determining the constitutional effects of Petitioner's prolonged detention. Given the risks presented to Petitioner by the virus, the exacerbation of those risks that are commensurate with detention in a facility such as the one in which Petitioner is currently housed, the length of Petitioner's detention, the lack of bad faith on Petitioner's part, and the likelihood

that Petitioner's removal proceedings shall continue for several more months before a final order of removal or order granting relief from removal is entered, this Court finds that Petitioner's detention under § 1226(c) without a bond hearing has become so arbitrary as to violate Due Process. Petitioner is therefore entitled to a bond hearing before an immigration judge where the Government shall bear the burden of proving that Petitioner is either a flight risk or danger to the community.[1] The Government shall therefore be required to provide Petitioner such a hearing within ten days.

In his remaining claims, Petitioner contends that, in light of his medical conditions, his conditions of confinement during the COVID-19 pandemic arise to the level of a Due Process violation warranting his outright release. As this Court recently explained, assuming the COVID-19 pandemic is a sufficiently severe circumstance that would warrant permitting a habeas claim based upon Petitioner's conditions of confinement, such a claim

> could be construed in two fashions – as a claim asserting that the jail has been deliberately indifferent to Petitioner's medical needs, or as a claim asserting that the conditions under which he is detained amount to an unconstitutional application of punishment without a supporting conviction in violation of the Due Process Clause. As there is no clear guidance from the Courts of Appeals or Supreme Court on how to adjudicate such claims in light of an ongoing pandemic, many courts have found that insufficient jail action in light of the virus can serve as a basis for release under these types of claims, *see, e.g,*, *Rafael L.O. v. Decker*, No. 20-3481, 2020 WL 1808843 (D.N.J. Apr. 9, 2020); *Cristian A.R. v. Thomas Decker, et al.*, No. 20-3600 (D.N.J. Apr. 12, 2020); *Basank v. Decker*, No. 20-2518, 2020 WL 1481503 (S.D.N.Y. Mar. 26, 2020); *Castillo v. Barr*, No. 20-00605, 2020 WL 1502864 (C.D. Cal. Mar. 27, 2020); *Thakker v. Doll*, No. 20-480, 2020 WL 1671563 (M.D. Pa. Mar. 31, 2020); *Malam v. Adducci*, No. 20-10829, 2020 WL 1672662 (E.D. Mich. Apr. 5, 2020); while many others have found that, where the

---

[1] While the dangers posed to Petitioner by COVID-19 may not be dispositive of his danger to the community or flight risk, Petitioner's need to remain at home to avoid the virus would certainly be relevant to both inquiries, and Petitioner is free to argue such before the immigration judge at his bond hearing.

jail takes adequate precautions in light of a given petitioner's medical history, no such relief is warranted. *See, e.g., Dawson v. Asher*, No. 20-409, 2020 WL 1304557 (W.D. Wa. Mar. 19, 2020) (rejecting TRO request because detainees could not succeed on merits of request for relief without at least showing concrete likelihood of actual injury as opposed to mere speculation in light of the legitimate governmental interest in detaining aliens throughout removal proceedings); *Sacal-Micha v. Longoria*, No. 20-37, 2020 WL 1518861 (S.D. Tex. Mar. 27, 2020) (rejecting habeas TRO based on medical conditions of confinement claim as that claim normally must be brought under § 1983, and in any event such a claim is not likely to succeed in the absence of a showing of deliberate indifference to the detainees medical needs); *Lopez v. Lowe*, No. 20-563, 2020 WL 1689874 (M.D. Pa. Apr. 7, 2020) (denying request for TRO by habeas petitioner as he could not establish deliberate indifference to his medical needs).

Turning first to the issue of Petitioner's medical needs, for an immigration detainee to make out a claim for relief based on a jail official's deliberate indifference to his medical needs under the Due Process Clause, he must show both that he is subject to a sufficiently serious medical need, and that jail officials have been deliberately indifferent to that need. *See, e.g., Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 581-82 (3d Cir. 2003); *Parkell v. Morgan*, 682 F. App'x 155, 159-60 (3d Cir. 2017); *King v. Cnty. of Gloucester*, 302 F. App'x 92, 96 (3d Cir. 2008). Even assuming that [the threat of] COVID-19 in and of itself is a sufficiently serious need, or that Petitioner's [asthma] is sufficiently serious to oblige the jail to take action to alleviate the risk presented by the virus, success on such a claim would still require Petitioner to show that officials at the jail were deliberately indifferent to that need – i.e. that Respondents "kn[e]w of and disregard[ed] an excessive risk to inmate health or safety." *Natale*, 318 F.3d at 582 (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)). This requires that the [respondent] was "both [] aware of facts from which the inference could be drawn that a substantial risk of serious harm exists and . . . dr[e]w th[at] inference." *Id.* Where some treatment or proscriptive action designed to alleviate the medical need has been provided and the dispute is over the adequacy of the treatment or preventative steps taken, federal courts "are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law.'" *Everett v. Nort*, 547 F. App'x 117, 121 (3d Cir. 2013) (quoting *United States ex rel. Walker v. Fayette Cnty.*, 599 F.2d 573, 575 n. 2 (3d Cir. 1979)). Neither a detainee's subjective dissatisfaction or disagreement with the professional judgment of medical staff as to how best to deal with a medical issue are normally

> sufficient to establish deliberate indifference. *Hairston v. Director Bureau of Prisons*, 563 F. App'x 893, 895 (3d Cir. 2014); *White v. Napolean*, 897 F.2d 103, 110 (3d Cir. 1990); *Andrews v. Camden Cnty.*, 95 F. Supp. 2d 217, 228 (D.N.J. 2000).
>
> . . . .
>
> . . . A claim challenging conditions [of confinement] under the Due Process Clause [under the theory that those conditions amount to punishment in the absence of a supporting conviction in turn] has both a subjective and objective component – the objective component requiring a showing that the deprivation involved in the conditions was sufficiently serious, and the subjective component requiring that jail officials act with a sufficiently culpable mind. [*Stevenson v. Carroll*, 495 F.3d 62, 68 (3d Cir. 2007) (citing *Bell v. Wolfish*, 441 U.S. 520, 535-36 (1979))]. The subjective component can be established by showing an express intent to punish; or by showing that the conditions in question were arbitrary, purposeless, or excessive in relation to the ascribed governmental objective. *Id.* Conditions which are reasonably related to a legitimate government interest and which are not excessive in relationship to that interest will therefore not support a claim in the absence of a showing of an express intent to punish. *Id.* at 67-69. . . . [I]mmigration detention is clearly reasonably related to a legitimate government interest – the Government's interest in securing those subject to removal proceedings pending the conclusion of those proceedings in order to ensure they do not abscond and that they attend those proceedings while also ensuring they are not a danger to the community in the meantime. *See, Dawson*, 2020 WL 1304557 at \*2; *see also Jennings*, 138 S. Ct. at 836; *Demore v. Kim*, 538 U.S. 510, 523 (2003); *Zadvydas*, 533 U.S. at 690-91.

*Jorge V.S. v. Green*, No. 20-3675, 2020 WL 1921936, at \*2-4 (D.N.J. Apr. 21, 2020).

Here, as in *V.S.*, the facility in which Petitioner is detained has taken numerous concrete steps to alleviate the risk the virus poses to detainees such as Petitioner based on CDC guidance for detention facilities. These steps include running with the detainee population below half capacity, intake screening for all incoming detainees including a medical check; isolation, observation, testing and treatment of those who show COVID-19 symptoms; cohorting and quarantining for fourteen days with daily testing those who have been exposed to infected or

symptomatic detainees who are not symptomatic themselves; daily temperature checks for detainees; making available sick calls on a daily basis for all detainees; referrals to hospitals for any treatment the facility cannot provide in house; increased cleaning and sanitation of the facility; the provision of more soap and hand sanitizer, as well as disinfectants under staff supervision, to detainees; requiring all staff to wear protective equipment and masks; the purchase and provision of face masks to all detainees; the suspension of unnecessary visitation, and the screening of all staff and outside vendors who deliver supplies to the facility.  (Document 7 attached to ECF No. 11).  The facility has also sought to maintain six feet separation for all detainees "regardless of the presence of symptoms" including by keeping detainees separate during meals and while sleeping, and as much as possible during other times.  (*Id.* at 5-6).

Turning first to Petitioner's general conditions of confinement claim, it is clear that the Government has a legitimate interest in using mandatory detention to ensure that those aliens being removed because of their criminal histories both attend their removal hearings and are not a danger to the community during the pendency of removal proceedings.  Given all of the concrete steps taken to alleviate the threat of the virus by the facility in which Petitioner is housed, Petitioner's current conditions of confinement are reasonable in relation to that purpose and are not excessive in light of the COVID-19 pandemic.  As Petitioner has not shown any express intent to punish, and as the conditions under which he is confined are reasonably related to a legitimate government interest and are not excessive in relation to that purpose, Petitioner has not shown that his conditions of confinement violate his right to Due Process.

Petitioner's deliberate indifference claim likewise fails because Petitioner has failed to show that the facility and its staff have been deliberately indifferent to COVID-19 in general or to Petitioner's medical history specifically.  Although Petitioner does have health conditions, such as

high blood pressure, which could exacerbate a COVID-19 infection, Petitioner's blood pressure has been monitored and controlled through medication throughout his time at the facility. (Document 1 attached to ECF No. 17). The facility has also monitored Petitioner's alleged "pre-diabetes" and found that Petitioner's glucose levels are only slightly above average and do not, as of yet, amount to diabetes requiring further treatment or mitigation. (*Id.*). Likewise, the medical staff at the facility have monitored and where necessary treated Petitioner's lung issues as they have presented at the facility. Thus, while Petitioner may disagree with the diagnoses or level of treatment he has received, the evidence presented to this Court does not amount to a showing of deliberate indifference to Petitioner's medical needs, and Petitioner has failed to show that his conditions of confinement, at this time, are so severe as to require his outright release. Petitioner's claims seeking release, and his motion seeking a temporary restraining order are therefore denied without prejudice.

### III. CONCLUSION

For the reasons expressed above, Petitioner's habeas petition (ECF No. 1) is GRANTED IN PART AND DENIED WITHOUT PREJUDICE IN PART; Petitioner shall receive an bond hearing before an immigration judge in accordance with this opinion within ten days, and Petitioner's motion seeking a temporary restraining order (ECF No. 7) is DENIED WITHOUT PREJUDICE. An appropriate order follows.

Dated: May 4, 2020                                    *s/Susan D. Wigenton*
                                                     Hon. Susan D. Wigenton,
                                                     United States District Judge